LAMKIN IP DEFENSE
Rachael D. Lamkin (246066)
One Harbor Drive, Ste. 304
Sausalito, CA 94965
916.747.6091
RDL@LamkinIPDefense.com

*Attorneys for DJ Plaintiff
Cristine Melo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINE MELO<br><br>    Plaintiff,<br><br>v.<br><br>FRIDA KAHLO CORPORATION, a Panamanian corporation, and FRIDA KAHLO INVESTMENTS, S.A., a Panamanian corporation,<br><br>    Defendant. | Case No. 3:19-cv-05449-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>HEARING: April 17, 2020<br>Time: 10:00 am<br>Judge: Hon. Judge Charles R. Breyer<br>Rm: 6 (17th Floor) |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

**NOTICE OF MOTION**

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 17, 2020 at 10:00 AM, before the Honorable Charles R. Breyer of the United States District Court for the Northern District of California, Plaintiff Cristine Melo does hereby and will move this Court for a preliminary injunction,

enjoining Defendants from issuing any further notices of infringement for Plaintiff's artwork.

This motion is based on this motion, the accompanying memorandum of points and authorities, Ms. Melo's Second Amended Complaint, all supporting documents thereto, and papers on file in this matter, and such arguments as may be made.

PLEASE FURTHER NOTE, the April 17, 2020 date was agreed on by the Parties as requested by this Honorable Court during the February 7, 2020 hearing.

*Rachael D. Lamkin*
Rachael D. Lamkin

| | LAMKIN IP DEFENSE
Rachael D. Lamkin (246066)
One Harbor Drive, Ste. 304
Sausalito, CA 94965
916.747.6091
RDL@LamkinIPDefense.com

*Attorneys for DJ Plaintiff
Cristine Melo*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINE MELO ) | Case No. 3:19-cv-05449-CRB |
| Plaintiff, ) | |
| ) | **PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. ) | |
| ) | HEARING: April 17, 2020 |
| FRIDA KAHLO CORPORATION, a ) Panamanian corporation, and FRIDA ) KAHLO INVESTMENTS, S.A., a ) Panamanian corporation, ) | Time: 10:00 am |
| | Judge: Hon. Judge Charles R. Breyer |
| | Rm: 6 (17th Floor) |
| Defendant. ) | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Civil L.R. 65-2, Plaintiff Cristine Melo respectfully moves this Court for an Order enjoining Defendants from issuing further intellectual property infringement takedown notices for Ms. Melo's artwork. If the Court declines this request, Ms. Melo respectfully requests an Order ceasing Defendants' issuance of foreign trademarks against Ms. Melo's artwork and ceasing issuance of takedowns for products for which Defendants have no United States trademark registrations.

## I. INTRODUCTION

Ms. Cristine Melo is an American artist of Brazilian birth, living in this District. (Second Amended Complaint ("SAC"), ¶2.) Ms. Melo is a person of limited means who supports herself exclusively through commissions and sales of her artwork. (*Id*., at ¶18.)

Ms. Melo has been painting portraits of the famed Mexican painter Frida Kahlo for years, long before the formation of the Frida Kahlo Corporation and before any trademarks were filed for the name "Frida Kahlo" by any person or entity. (*Id*., at ¶16.) Ms. Melo sells her hand-painted, fine art portraits of Frida Kahlo on eBay and digitized versions of her hand-painted portraits on Pay On Demand (POD) sites such as Redbubble and Zazzle. POD sites allow artists such as Ms. Melo to offer original artworks to consumers, who select her artwork and marry said art to a product (e.g., jewelry or a cell phone case). The art is then placed on the product for shipment to the customer.

The Frida Kahlo Corporation was created by a wealthy man named Carlos Dorado who admits to conning Frida Kahlo's family "like a used car salesman" into assigning to him their trademark registrations for "Frida Kahlo". (*Id*., at ¶20.) FKC owns roughly a dozen trademark registrations for "Frida Kahlo" in product categories such as tequila and cigars. (*Id*., at ¶24.) FKC does not own US trademark registrations for the great majority of products offered on POD sites. For example, FKC has no registrations for "Frida Kahlo" for jewelry or watch bands or cell phone cases. (*Id*., at ¶¶174-75.) Undaunted, in order to improperly capture products for which FKC has not been able to secure US registrations, FKC submits foreign trademarks (e.g., Chinese and European registrations) to the US platforms. (*Id*., at ¶¶142-148.) Foreign trademark registrations are not enforceable in the United States. *See Person's Co. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme."). However,

because of factors such as the volume of takedowns and the liability associated with failing to remove, the platforms appear to be simply accepting the foreign registrations. (*See* SAC, ¶236.)

FKC has been taking down Ms. Melo's artwork for eight (8) years, across several platforms, including Zazzle, Etsy, and Redbubble. (*Id*., at ¶7.) But Ms. Melo's use of the name "Frida Kahlo" to describe her artwork depicting "Frida Kahlo" is not brand identifying, *i.e.*, not trademark use. And after eight (8) years of suffering FKC's improper takedowns, FKC finally agrees with Ms. Melo:

- "Defendants agree that Melo did not infringe on their trademarks relating to the five takedowns."
- "Defendants agreed that Melo's artwork did not infringe."
- "Defendants have agreed that Melo's artwork does not constitute unauthorized trademark use of Defendants' trademarks."

(SAC, ¶¶163-168.)

These admissions notwithstanding, on the exact same day that FKC filed its Motion admitting that Ms. Melo's artwork does not infringe, FKC issued yet another improper takedown notice to Redbubble, resulting in the removal of four (4) more of Ms. Melo's portraits. (SAC, ¶¶162-163.) FKC's attempt to divest this Court of jurisdiction by admitting that Ms. Melo's artwork does not infringe does nothing to remedy their past improper takedowns, applies only to Redbubble, does nothing to reinstate Ms. Melo's work on other platforms such as Zazzle, and fails to remedy the very real harm of Ms. Melo being permanently banned from the platforms due to the platforms' Repeat Infringer Policies. (*See* SAC, ¶¶136-37,169,204,226,236.)

Further, FKC's promise to cease removing Ms. Melo's art appears to only apply to Ms. Melo's Redbubble store. On Zazzle, for example, Zazzle continues to automatically remove Ms. Melo's artwork based on instructions from FKC. (SAC, ¶¶196-203.) Indeed, FKC has instructed

Zazzle to remove any and all artwork that references Frida Kahlo. (SAC, ¶¶171,175,184.)

Ms. Melo respectfully seeks an Order requiring FKC to cease all takedown efforts against Ms. Melo's artwork during the pendency of this litigation. If this Honorable Court declines, Ms. Melo respectfully asks that this Court issue an Order mandating that FKC (1) immediately cease the use of foreign trademarks to remove Ms. Melo's artwork from platforms; and; (2) immediately cease issuing takedowns for products for which FKC has no US trademark registrations.

## II.   LEGAL AUTHORITY

A preliminary injunction should issue where the plaintiff establishes that "[she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Le Van Hung v. Schaaf*, No. 19-cv-01436-CRB, 2019 U.S. Dist. LEXIS 68867, at *8-9 (N.D. Cal. Apr. 23, 2019) (*citing Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013)). The likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors. *Id*. (*quoting Disney Enterprises, Inc. v. VidAngel, Inc*., 869 F.3d 848, 856 (9th Cir. 2017) (quotation marks removed)). Moreover, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id*. (*quoting Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).

## III.   A PRELIMINARY INJUNCTION SHOULD ISSUE

### A.   Ms. Melo Is Likely to Succeed on the Merits

#### i.   FKC Admits Ms. Melo Does Not Infringe

Ms. Melo is likely to prevail on her Non-Infringement claim. (*See* SAC, Count II, ¶¶77-90.) First and foremost, FKC admits that Ms. Melo's use of Frida Kahlo's name is "not brand identifying" use; *i.e.*, Ms. Melo does not use "Frida Kahlo" as a trademark but merely to describe

the subject of her work. (SAC, ¶¶163-168.) Because FKC admits that Ms. Melo's use of Frida Kahlo is not "brand identifying," Ms. Melo is likely to prevail on her non-infringement claim.

### ii. Ms. Melo is Likely to Prevail on Her Intentional Interference Claim

Ms. Melo's likelihood of prevailing on her non-infringement claim is sufficient to support prong one of the preliminary injunction test. *See Dennis v. Wells Fargo Bank, NA*, No. C 10-2328 PJH, 2010 U.S. Dist. LEXIS 82512, at *2 (N.D. Cal. July 15, 2010). But separately and equally supporting a preliminary injunction, Ms. Melo can also establish a likelihood of prevailing on her intentional interference claim. (SAC, Count VI, ¶¶126-211.)

In 2010, Carlos Dorado, on behalf of FKC, wrote to Zazzle and accused Zazzle of selling products that violate FKC's intellectual property. (*Id*., at ¶180.) In settlement of that dispute, Zazzle agreed to take down all references to Frida Kahlo in the title or search terms for any product, regardless of whether the use is actually infringing and regardless of whether FKC actually holds a mark covering said product. (*Id*., at ¶¶170,180-84.) Both of these demands are remarkable. First, a blanket ban on any use of "Frida Kahlo" in titles and search terms is unquestionably improper; the great bulk of such use is non-infringing. *See Playboy Enters. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). Further, FKC—at best—owns trademark registrations in a limited number of categories, covering a limited number of goods. FKC has no right to block the use of Frida Kahlo for products for which it has no trademark registrations. *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352, 1354 (9th Cir. 1985) ("registration constitutes prima facie evidence of a protected interest with respect to the good specified in the registration only.") Regardless, FKC has been executing on FKC's instructions for a decade. (SAC, ¶183.)

In 2017, Zazzle, at FKC's instruction, took down Ms. Melo's "Frida Kahlo With Birds" apron, *i.e*., an offering of her painting for Frida Kahlo with Birds to be placed on an Apron. There is nothing about the phrase "Frida Kahlo With Birds" that is brand identifying; it is identical to use

the FKC had already stated was not infringing use. As part of its takedown, Zazzle suggested that Ms. Melo join the co-branded FKC-Zazzle "FanMerch" program. Both on principle and because Ms. Melo must set her royalty level far above the mandatory 10% royalty of the FanMerch program to make even a modest living, Ms. Melo refused. (*Id*., at ¶¶188,196-199.)

In December 2020, Zazzle, at FKC's instruction, removed several more of Ms. Melo's artworks, each again non-infringing and for product categories for which FKC has no US registrations, *e.g.*, coffee mugs. (*Id*.)

In 2019, FKC through its agent Red Points, took down ten (10) of Ms. Melo's artworks, asserting foreign trademarks, including a Chinese mark covering the name Frida Kahlo in Chinese. (*Id*., at ¶¶139-167.)

In order to prevail on her intentional interference with prospective business advantage claim, Ms. Melo must plead and prove: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003). Ms. Melo has plead each of these elements and is likely to prevail on the claim.

FKC knew of Ms. Melo's relationship with the platforms because FKC submits the takedowns through the actual platforms and the takedowns occur after a review of Ms. Melo's offerings on said platforms.

FKC's wrongful acts include: (1) employing the platforms' takedown procedures for non-infringing uses; (2) employing the platforms' takedown procedures against products for which it holds no US registrations; (3) asserting foreign trademarks against US based artists such as Ms.

Melo;[1] and (4) continuing to remove Ms. Melo's artwork after promising said conduct would cease. (SAC, ¶¶126-211.)

FKC committed these acts knowing that the platforms would remove Ms. Melo's offerings, indeed that is the entire purpose of the takedown notices. FKC was successful and Ms. Melo was financially harmed. (*Id*.)

Thus, Ms. Melo's likelihood of prevailing on her intentional interference claims provides a second, independent basis under prong one of the preliminary injunction calculus.

### iii. Ms. Melo is Likely to Prevail on Her Nominative Fair Use Claim

Artists such as Ms. Melo have been creating portraits of Frida Kahlo for decades prior to the formation of the Frida Kahlo Corporation. (SAC, ¶¶61-64, 229-230.)

Ms. Melo's use of "Frida Kahlo" to describe her portraits of Frida Kahlo is quintessential nominative fair use. The doctrine "forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *New Kids on the Block v. News Am. Publ'g, Inc*., 971 F.2d 302, 306 (9th Cir. 1992).

Indeed, "[t]rademarks are part of our common language, and we all have some right to use them to communicate in truthful, non-misleading ways." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1185 (9th Cir. 2010). Ms. Melo's use of Frida Kahlo's name to describe her artwork featuring Frida Kahlo is protected by the nominative fair use doctrine; FKC's trademark registrations cannot interfere with Ms. Melo's Constitutionally protected right to engage in truthful communications with the public. *Toyota Motor Sales,* 1177.

In cases where a nominative fair use defense is raised, courts ask whether: (1) the product

---

[1] *Andersen Tax LLC v. Laffont-Reveilhac*, No. 17-cv-01311-EMC, 2017 U.S. Dist. LEXIS 93298, at *2 (N.D. Cal. June 16, 2017); *Ingenohl v. Olsen & Co*., 273 U.S. 541, 544 (1927) ("A trademark started elsewhere would depend for its protection in Hongkong upon the law prevailing in Hongkong and would confer no rights except by the consent of that law.") (Holmes, J.)

was readily identifiable without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested she was sponsored or endorsed by the trademark holder. *Toyota Motor Sales*, 1175-76; *see also Playboy Enters. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

Here, Ms. Melo's artwork would not be readily identifiable (nor searchable) without the use of FKC's alleged "Frida Kahlo" marks. As in *Playboy*, "There is no other way that Ms. [Melo] can identify or describe . . . her services without venturing into absurd descriptive phrases." *Playboy*, at 802. To describe her artwork as depicting "the famous Mexican painter with a mustache and unibrow" "would be impractical as well as ineffectual[.]" *Id*. In fact, Ms. Melo would be greatly disadvantaged in the marketplace if she were forced to describe her work thusly.

Ms. Melo used only as much of the "Frida Kahlo" mark as is necessary.

And, Ms. Melo never falsely suggested she is sponsored or endorsed by FKC. In fact, Ms. Melo repeatedly makes clear that she is the creator of the portraits. (SAC, ¶¶30, 87.)

Thus, Ms. Melo's likelihood of prevailing on her nominative fair use claim provides a third, independent basis under prong one of the preliminary injunction calculus.

**B.     Ms. Melo is Likely to Suffer Irreparable Harm**

FKC's repeated takedowns are extremely damaging to Ms. Melo in a manner that a money judgment at the end of this litigation will not absolve.

First, the platforms each have a policy that they will remove artists from their platform in case of repeated notices of infringement. For example, Redbubble's stated policy:

> REPEAT INFRINGER POLICY: It is Redbubble's policy, in appropriate circumstances, to disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights, trademark rights, other intellectual property rights or publicity rights of others.

(SAC, ¶136; *see also id.,* at ¶¶169,204.)

The platforms' Repeat Infringer Policies are all secret; no one external to the platforms knows how many notices will trigger permanent termination. But at some point Ms. Melo will get terminated and she will lose the ability to support herself.

Second, the algorithms on these platforms are such that the type and number of artworks one has to offer creates cascade effects that brings customers to an artist's storefront. (SAC, ¶210.) Thus, each portrait that is removed effects when and if her other works will be viewable given the platform's algorithms. (*Id*.).

These harms are not recoverable in money damages at the end of this litigation.

### C. The Balance of Equities Weights Heavily in Ms. Melo's Favor

Here, there can be no question that the balance of equities favor Ms. Melo. Ms. Melo is an artist living on limited means whose sole support is her artwork. (SAC, ¶18.) The takedowns issued by FKC have all but eliminated Ms. Melo's income and threaten to permanently suspend her from the platforms. Conversely, whether or not Ms. Melo sells her artwork will have no effect on FKC; her sales are a drop in their oceanic bucket.

Materially, FKC has employed substantial wrongful conduct in its takedown practices, including (1) the unlawful assertion of foreign marks; (2) the removal of products for which FKC owns no cognizable intellectual property rights; and (3) the use of the takedown system for force artists in Zazzle's Fanmerch program.

### D. The Public Interest Weighs In Favor of an Injunction

The public interest is best served when intellectual property is properly enforced. *See SmithKline Beecham Corp. v. Apotex Corp.,* 403 F.3d 1331, 1354 (Fed. Cir. 2005); *Nestier Corp. v. Menasha Corporation-Lewisystems Div.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984).

Further, the public has an interest in restraining a purported intellectual property rights holder's effort to unfairly assert a right beyond the scope of its grant. *See Mallinckrodt, Inc. v.*

*Medipart, Inc*., 976 F.2d 700, 703-04 (Fed. Cir. 1992).

Further, the principles of comity and sovereignty mandate that foreign trademarks not be enforced against US artists.

Moreover, the public has an undeniable interest in representations of Frida Kahlo, and FKC should not be the only entity permitted to create said representations. Especially where, as here, hundreds if not thousands of California artists are being affected. (SAC, ¶¶225-238.)

Finally, there is also public interest in due process. *Sturgis v. Goldsmith, 796 F.2d 1103 (9th Cir. 1986); Bustamante v. Eyman*, 456 F.2d 269, 274 (9th Cir. 1972); *In re Frantz,* 534 B.R. 378, 390 (Bankr. D. Idaho 2015). Platforms are rapidly becoming a requisite storefront for most artists. These platforms have also become, unfortunately, the new courts of law. FKC was able to obtain multiple injunctions from the platforms' automated systems without satisfying any of the elements required for an injunction in a court of law. That FKC can obtain *ex parte* injunctions, asserting unenforceable foreign rights, absent any mechanism to defend is deeply troubling and violative of Ms. Melo's due process.

### IV.     CONCLUSION

Trademarks do not exist to protect FKC, or any alleged rights holder. *Enter. Rent-A-Car Co. v. Advantage Rent-A-Car, Inc.,* 330 F.3d 1333, 1339 (Fed. Cir. 2003) (*quoting* H.R. Rep. No. 76-944, at 3 (1939).) They exist to protect the consumer from confusion as to the source of goods. *Id*. Here, the *sine qua non* of the Lanham Act isn't triggered as Ms. Melo's use of Frida Kahlo is not brand identifying use. No trademark infringement notices against Ms. Melo should stand and no more should issue.

An order from this Honorable Court, that merely holds FKC to its own admissions, that Ms. Melo does not infringe is respectfully requested. In the alternative, Ms. Melo requests an order mandating that FKC stop using foreign marks to remove Ms. Melo's artwork from platforms,

and stop issuing takedowns for products for which it owns no US registrations.

Respectfully submitted,

*Rachael D. Lamkin*
Rachael D. Lamkin

*Attorneys for DJ Plaintiff
Cristine Melo*

# CERTIFICATE OF SERVICE

The following document will be filed with the Court's ECF system on today's date, 02/18/20202, and thereby served upon and available to counsel for Defendants.

**NOTICE AND MOTION FOR PRELIMINARY INJUNCTION**

Respectfully submitted,

*Rachael D. Lamkin*
Rachael D. Lamkin