1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Monty Agarwal (SBN 191568)
magarwal@aaclegal.com
Antolin Agarwal, LLP
3021 Citrus Circle, Suite 220
Walnut Creek, CA 94598
Tel: (925) 262-4180
Fax: (925) 262-4269

Darlene Barron (*pro hac vice*)
dbarron@lex188.com
Trueba & Suarez, PLLC
9150 S. Dadeland Blvd., Suite 1008
Miami, Florida 33156
Tel: (305) 482-1001
Fax: (786) 516-2826

Counsel for specially appearing Defendants
Frida Kahlo Corporation and
Frida Kahlo Investments, S.A.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CRISTINE MELO, an individual,

     Plaintiff,

v.

FRIDA KAHLO CORPORATION, a
Panamanian corporation, and FRIDA
KAHLO INVESTMENTS, S.A., a
Panamanian corporation,

     Defendants.

_____/

CASE NO.:  3:19-cv-05449-CRB

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED DECLARATORY JUDGMENT COMPLAINT FOR LACK OF PERSONAL JURISDICTION, F.R.C.P. 12 (b)(2); LACK OF SUBJECT MATTER JURISDICTION AND F.R.C.P. 12(b)(1); and IMPROPER VENUE, F.R.C.P. 12(b)(3)**

**Date: April 17, 2020**
**Time: 10:00 AM**
**Judge: Hon. Judge Breyer**
**Courtroom: 6 (17th Floor)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on April 17, 2020 at 10:00 AM, before the Honorable Charles R. Breyer of the United States District Court for the Northern District of California, Defendants, Frida Kahlo Corporation ("FKC") and Frida Kahlo Investments, S.A. ("FKI"; together with FKC, "Defendants"), who are specially appearing for the purpose of challenging personal jurisdiction and, by and through its undersigned counsel, pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3), hereby move this Court to dismiss the Complaint of Plaintiff, Cristine Melo ("Plaintiff" or "Melo") against Defendants for lack of subject matter jurisdiction and standing, lack of personal jurisdiction, and improper venue.

This motion is based on this motion, the accompanying memorandum of points and authorities, the supporting declarations of Carlos R. Dorado,  and counsel for Defendants, Darlene Barron, and papers on file in this matter, and such arguments as may be made.

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY OF ARGUMENT ...................................................................................................

II.     INTRODUCTION AND FACTUAL ALLEGATIONS ...................................................... 1

III.    MEMORANDUM OF LAW ................................................................................................ 5

        A.      This Court Lacks Personal Jurisdiction Under FRCP 12(b)(2). ........................... 5

                1.      Defendants are not Subject to this Court's General Jurisdiction. ................... 7

                2.      Defendants are not Subject to this Court's Specific Jurisdiction. ................... 7

        B.      This Court Lacks Subject Matter Jurisdiction. .................................................. 11

                1.      An Actual Controversy Does Not Exist ........................................................ 11

                2.      Cancelation of a Trademark is Not an Independent Cause of
                        Action. ........................................................................................................ 13

                3.      Plaintiff Fails to Plead a Basis for Jurisdiction over the State Law
                        Claims Other than Supplemental Jurisdiction. ............................................. 13

        C.      Venue is Improper Under 28 U.S.C. § 1391(b). ................................................. 14

IV.     CONCLUSION .................................................................................................................. 15

# 2201TABLE OF AUTHORITIES

**Cases**

*Airs Aromatics, Ltd. Liab. Co. v. Victoria's Secret Stores Brand Mgmt.,*
    744 F.3d 595 (9th Cir. 2014) ... …………………………………………………..13

*Already, LLC v. Nike, Inc.,* 568 U.S. 85 (2013) …………………………………… ............. 11

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064 (9th Cir. 2017) ........................ 5, 6, 7, 9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ) .................................... 10

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) …........................ ………5

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ……………………… ................................ ………..5

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ……………….............. ………………..6

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) ……………… ........... ……...5

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ………......... ………..6

*Walden v. Fiore,* 571 U.S. 277 (2014) ... ............................................................... 6, 7, 9

*Williams v. Yamaha Motor Co,* 851 F.3d 1015 (9th Cir. 2017) ............................................. 6, 9

**Statutes and Rules**

15 U.S.C. § 1119 ...................................................................................................... 13
28 U.S.C. §§ 1338 .................................................................................................... 13
28 U.S.C. §§ 1367 .................................................................................................... 13
28 U.S.C. § 1391 (b) ………… ............................................................................... 14
28 U.S.C. § 2201(a) ........................................................................................... 11, 13

Cal. Civ. Proc. Code § 410.10................................................................................5Rule

Federal Rules of Civil Procedures
    Rule 12(b)(1) ………........................................................................................ 15
    Rule 12(b)(2) ................................................................................................... 15
    Rule 12(b)(3) ................................................................................................... 15

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT, CASE NO.: 3:19-cv-05449-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    SUMMARY OF ARGUMENT

Plaintiff's claims purportedly stem from takedown notices initiated by Red Points, in Spain, on behalf of Defendants, in Panama, and based on Defendants' Chinese and European trademarks, to the Redbubble platform, domiciled in Australia, which affected Plaintiff, residing in California. Defendants have no presence whatsoever in California and Plaintiff does not and cannot allege that Defendants are subject to general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). All alleged activity related to the Redbubble takedowns by Defendants, through Red Points, in Spain, occurred outside of California.  Plaintiff did not even list her location with respect to the items she offered through Redbubble. Defendants did not purposely target California, as Defendants did not have any way of targeting California residents in monitoring the online platforms. As such, Defendants are not subject to specific jurisdiction. *Walden v. Fiore*, 571 U.S. 277 (2014); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017).

Plaintiff also alleges that non-party, Zazzle, incorporated in California, took down Plaintiff's items.  However, Plaintiff cannot establish that Defendants directed the Zazzle takedowns, as such were done in accordance with Zazzle's normal content review process and unbeknownst to Defendants.  Defendants' only connection to California relating to the takedowns is Plaintiff. This is not sufficient to establish personal jurisdiction. *Id.*  Defendants entered into a contract with Zazzle in 2012, where Zazzle is a non-exclusive licensee of Defendant FKC.  Nothing in the contract between Zazzle and FKC requires Zazzle to initiate takedowns on FKC's behalf.  The contract between Defendants and Zazzle alone is insufficient to establish specific personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

Defendants immediately reinstated Plaintiff's specific items identified in the complaint and post-complaint items on Redbubble and requested that Red Points and Redbubble cease from removing Plaintiff's items. Under 28 U.S.C. § 2201(a), no actual controversy exists between Defendants and Plaintiff relating to the Redbubble takedowns at issue in the Second Amended

Complaint because the Redbubble items have all been reinstated with no likelihood of being taken down again. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Plaintiff seeks an advisory opinion that none of Plaintiff's items will ever infringe on FKC's trademarks because Plaintiff's Redbubble items did not infringe on FKC's trademarks. Future hypothetical items may or may not infringe FKC's trademarks. Further, Plaintiff seeks an advisory opinion that the 2012 contract between Zazzle and FKC harms California artists – without asserting a legally cognizable harm. At this time, no actual controversy exists. Thus, the Court should dismiss the Second Amended Complaint for lack of personal and subject matter jurisdiction.

1

## II.    INTRODUCTION AND FACTUAL ALLEGATIONS

2

3          On February 7, 2020, this Court dismissed the First Amended Complaint filed by Plaintiff,

4    Christine Melo ("Plaintiff" or "Melo") with leave to amend.  The Court provided a list of items for

5    consideration, in the event that Plaintiff would be able to allege facts in good faith, if Plaintiff decided

6    to file her Second Amended Complaint.  Plaintiff fails to cure her pleading deficiencies in the Second

7    Amended Complaint.  Plaintiff also discloses to the Court in the Second Amended Complaint that

8    she purposefully listed Frida Kahlo items on Zazzle in December 2019, after years of not listing any

9    items on Zazzle, that were then taken down by Zazzle.  [DE 38 ¶¶ 200-02]. This occurred after full

10   briefing of the motion to dismiss and her motion for preliminary injunction – which was scheduled to

11   be heard on January 17, 2020. [DE 29]. However, Defendants did not initiate the December 2019

12   takedowns. [DE 38 ¶ 202; Declaration of Carlos Dorado, attached hereto as **Exhibit A** ("Dorado

13   Dec.") ¶ 13].  Nor did Zazzle have any obligation to issue takedown notices based on the agreement

14   between Zazzle and FKC. [Dorado Dec. ¶ 11].  Such takedowns were engineered by Plaintiff in an

15   attempt to establish personal jurisdiction and an actual controversy.

16

17         The purported actions taken by Defendants, Frida Kahlo Corporation ("FKC") and Frida

18   Kahlo Investments, S.A. ("FKI"; together with FKC, "Defendants") alleged in the Second Amended

19   Complaint are as follows:

20

21         1.        Red Points Solutions, S.L., based in Barcelona, Spain ("Red Points"), on behalf of

22   Defendants, issues takedown notices to various online platform providers to enforce Defendants'

23   trademarks in accordance with the intellectual property policy ("IP Policy") of the respective online

24   platform provider. [DE 38 ¶¶ 35-44]. Plaintiff Christine Melo ("Plaintiff" or "Melo") chooses to sell

25   her items on such platform providers, including Redbubble. [DE 38 ¶ 18]. "Redbubble is a company

26   limited by shares, incorporated and domiciled in Australia (ACN 119200592). Its registered office is

27   at Level 3, 271 Collins Street, Melbourne VIC 3000. Redbubble is listed on the Australian Securities

28   Exchange    (ASX:RBL)."    [Redbubble    Annual    Report    2019,    available    at

-1-

https://shareholders.redbubble.com/annualreport/2019/2-3/#zoom=z].   Five (5) takedowns were issued by Red Points, on behalf of Defendants, based on FKC's European and Chinese trademark registrations relating to the trademark FRIDA, to Redbubble that resulted in Plaintiff's work temporarily removed from the Redbubble website. [DE 38 ¶¶ 78, 81, 139-166].  Defendants reinstated all of Plaintiff's items in the Second Amended Complaint and requested that Red Points and Redbubble cease from taking down Plaintiff's items. [DE 38 ¶ 167; DE 24-1 ¶ 5; DE 24-2 ¶ 7].  No actual controversy exists with respect to the Redbubble takedowns.

2.      In 2010, Defendants sent an email to Zazzle regarding infringing items listed on their website *at that time* (the "2010 Email"). [DE 38 ¶ 180].  Plaintiff alleges that she chose to sell her items on Zazzle beginning in 2009.  [DE 38 ¶ 18].  Many years later, in 2017 and 2019, Zazzle removed three (3) of Plaintiff's items, [DE 38 ¶¶ 200-02], as a result of their normal content review process. [Declaration of Darlene Barron, attached hereto as **Exhibit B** ("Barron Dec."), ¶ 4].  Plaintiff also refers to Zazzle as the "California IP enforcer" for the last decade. [DE 38 ¶ 185]. Zazzle is not an exclusive licensee of Defendants, [Dorado Dec. ¶ 12], and nothing in the contract between Zazzle and FKC obligates Zazzle to be the so-called "California IP enforcer."  [Dorado Dec. ¶ 11; Ex. 1 to Dorado Dec.].  Further, Defendants have informed Zazzle that Defendants would not consider Plaintiff's items to be infringing as long as she presents her work as her own work and using descriptions and titles that would not lead to consumer confusion as to source. [Barron Dec. ¶ 5; Ex. 1 to Barron Dec.].  No actual controversy between the Defendants and Plaintiff exists regarding the Zazzle takedowns, which were initiated by Zazzle, and not by Defendants. Defendants had no way of knowing that the Zazzle takedowns occurred, let alone that Plaintiff resides in California.

3.      Plaintiff alleges that Defendants and Zazzle entered into a contract in California, which in turn purportedly prevents Plaintiff from selling her items at Plaintiff's chosen rate on Plaintiff's chosen platform, Zazzle, and hypothetically harms other California sellers who might want to sell on Zazzle. [DE 38 ¶¶ 188-95].  These allegations of attenuated contacts between Defendants and Zazzle

are insufficient to confer personal jurisdiction over the purported dispute between Plaintiff and Defendants.

This case ought to be dismissed for several reasons including lack of personal jurisdiction, lack of subject matter jurisdiction and improper venue. The Second Amended Complaint is replete with argument, legal conclusions and allegations that have nothing to do with Defendants' actions. Plaintiff's theory, in essence, is that her causes of action arise in California, because (i) *Plaintiff* resides in California, and (ii) the platforms on which *Plaintiff* chooses to sell her wares have a presence in California. This is insufficient to establish that *Defendants* are subject to personal jurisdiction in California. Further, Plaintiff improperly attempts to establish Defendants' purported minimum contacts with California based on her incorrect presumption that Defendants probably issue takedown notices to Etsy, a platform not at issue in this case, because such alleged takedown notices might affect other California residents based on Etsy's general statistics (that are not specific to Defendants). [DE 38 ¶ 226]  As explained in greater detail below, the mere fact that a California resident may have suffered injury, or might suffer injury, is insufficient by itself to establish personal jurisdiction.

Plaintiff's Second Amended Complaint also incorporates a novel, but legally non-cognizable, theory on how to determine Defendants' purported contacts with California. [DE 38 ¶ 226]. Notably, the allegations include no facts relating to Defendants.  Defendants have no practical way of knowing where a seller on a platform resides. [Dorado Dec. ¶ 16; Dorado Dec., Ex. 2, Declaration of Carolina Rosich, Chief Legal Officer, Red Points, ("Rosich Dec."), ¶¶ 5-6]. Some platforms do not show a seller's location. [Dorado Dec. ¶ 15; Rosich Dec. ¶ 5].  Other platforms may include a seller's location somewhere on the seller's page. [*Id.*]. Red Points uses an automated system based on programming rules to search the internet for counterfeit sellers. [Dorado Dec. ¶ 14; Rosich Dec. ¶ 2].  The programming rules do not include any seller's location information, in large part because not all platforms list this information. [Dorado Dec. ¶ 15; Rosich Dec. ¶¶ 5-6].  Accordingly, Defendants do

-3-

not have the ability, through Red Points or otherwise, to determine the locations of all sellers on Redbubble or to target any sellers based on where the seller resides. In fact, Defendants' only learned of the Redbubble takedowns that affected Plaintiff after the filing of Plaintiff's Complaint. [Dorado Dec. ¶ 18].  Moreover, Defendants immediately reinstated the relevant takedowns that Red Points initiated. [DE 38 ¶ 167].

Defendants have never sent a cease and desist letter to Plaintiff. [Dorado Dec. ¶ 19].  Nor did Defendants, directly or through Red Points, initiate any takedown of Plaintiff's work on Zazzle. [Dorado Dec. ¶ 13].  Unlike the Redbubble takedowns, in which Red Points acted on behalf of Defendants, Zazzle initiated such takedowns. [DE 38 ¶ 202]. Thus, Defendants had no way of knowing that Zazzle initiated a takedown that affected Plaintiff, or any California resident.  The facts do not support personal jurisdiction, and Plaintiff cannot cure her defective pleading relating to specific jurisdiction in her Second Amended Complaint.

Further, Defendants "are Panamanian Corporations, each with a principal place of business in Florida." [DE 38 ¶ 3; Dorado Dec. ¶ 3]. Defendants are not incorporated or registered to do business in California. [Dorado Dec. ¶ 5].  Defendants have no offices, employees, subsidiaries, or agents in California. . [Dorado Dec. ¶ 6].  Defendants do not maintain any bank accounts or financial accounts in California. [Dorado Dec. ¶ 7]. Defendants do not own or lease any real property or personal property in California. [Dorado Dec. ¶ 7]. As such, Plaintiff does not and cannot allege that Defendants are "essentially at home in California," as is required for California courts to exert general jurisdiction over Defendants. Any amendment to Plaintiff's complaint would be futile.

The Second Amended Complaint alleges declaratory judgment counts for (I) Non-Infringement of an Artistic Work; (II) Non-Infringement; (III) Nominative Fair Use; (IV) Cancelation Due to Naked Assignment; (V) Cancelation due to Fraud; (VI) Intentional Interference with Prospective Business Advantage; (VII) Unlawful and Unfair Competition (Cal. Bus. & Prof. Code §17200 *et seq.*), and (VIII) Cancelation Due to Abandonment. Plaintiff improperly attempts to

sweepingly cancel several of Defendants' trademarks – different marks than those asserted in the takedowns at issue.  This case ought to be dismissed for lack of personal jurisdiction and lack of subject matter jurisdiction.

III. **MEMORANDUM OF LAW**

    A. **This Court Lacks Personal Jurisdiction Under FRCP 12(b)(2).**

Defendants are not subject to personal jurisdiction in this Court. *See* F.R.C.P. 12(b)(2). "Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).  A court in California "may exercise [personal] jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. "Due process constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Axiom Foods*, 874 F.3d at 1068 (internal quotation marks omitted). The United States Supreme Court recognizes general and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).

For a foreign corporation to be subject to the Court's general jurisdiction, the foreign corporation must have "affiliations with the State [that] are so 'continuous and systematic' as to render [defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). With respect to specific jurisdiction, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (citations omitted). "For specific jurisdiction, a defendant's general connections with the forum are not enough." *Id.* "[T]he relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the *defendant himself* creates with the forum State." *Axiom Foods*, 874 F.3d at 1068 (internal quotation marks and citations omitted) (emphasis added). The minimum contacts analysis focuses on "the defendant's contacts with the forum State itself, *not the*

-5-

*defendant's contacts with persons who reside there.*" *Id.* (emphasis added). "We have consistently rejected attempts to satisfy the *defendant*-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). The Ninth Circuit applies a three factor test for specific jurisdiction: "(1) the defendant either 'purposefully direct[s]' its activities or 'purposefully avails' itself of the benefits afforded by the forum's laws; (2) the claim 'arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [] comport[s] with fair play and substantial justice, i.e., it [is] reasonable.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The foreseeability of injury in a forum 'is not a "sufficient benchmark" for exercising personal jurisdiction.'" *Axiom Foods*, 874 F.3d at 1070 (citations omitted).  "*[S]ome single or occasional acts* related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an *attenuated* affiliation with the forum." *Id.* at 1068 (emphasis added) (internal quotation marks omitted) (citing *Burger King*, 471 U.S. at 475 n.18). A defendant's *random, fortuitous, or attenuated contacts will not suffice*. *Id.* (emphasis added) (internal quotation marks omitted) (citing *Walden*, 134 S. Ct. at 1123).  Once the defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Plaintiff fails to allege sufficient facts to establish that Defendants are subject to this Court's *general* or *specific* jurisdiction.  As set forth below, Defendants have no presence in California and are not essentially at home in California. Plaintiff cannot establish that Defendants purposefully avail themselves of the benefits of California under the first prong of the Ninth Circuit test for specific jurisdiction. Further, Plaintiff fails to allege that its claims arise out of Defendants' California activities, as is required under the second prong of the Ninth Circuit test for specific jurisdiction.

1

2        1.    <u>Defendants are not Subject to this Court's General Jurisdiction.</u>

3   Plaintiff does not, *and cannot*, allege sufficient facts to establish that Defendants have

4   systematic and continuous contacts with California for general jurisdiction.  Plaintiff acknowledges

5   that Defendants "are Panamanian Corporations, each with a principal place of business in Florida."

6   [DE 38 ¶ 3; Dorado Dec. ¶ 3]. Defendants are not registered to do business in California. [Dorado

7   Dec. ¶ 5].  Defendants have no offices, employees, subsidiaries, or agents in California. [*Id.* ¶ 6].

8   Defendants do not maintain any bank accounts or financial accounts in California. [*Id.* ¶ 7].

9   Defendants do not own or lease any real property or personal property in California. [*Id.*]. As such,

10  Defendants are not "essentially at home in California," as is required for California courts to exert

11  general jurisdiction over Defendants. Accordingly, Plaintiff does not establish general jurisdiction.

12       2.    <u>Defendants are not Subject to this Court's Specific Jurisdiction.</u>

13  Plaintiff's pleading alleges that this Court has specific jurisdiction over Defendants. [DE 38 ¶

14  7]. For specific jurisdiction, under the first prong of the Ninth Circuit test, Plaintiff must establish that

15  Defendants, *themselves,* purposefully availed themselves to the benefits of California, and that

16  Defendants' contacts are with California, not with the persons who reside in California. *Walden*, 571

17  U.S. at 284. Defendants' "random, fortuitous, or attenuated contacts will not suffice." *Axiom Foods*,

18  874 F.3d at 1068.

19  In the Second Amended Complaint, Plaintiff alleges that "[a]t least the following platforms

20  are either incorporated or have principal places of business in California: eBay, Zazzle, Etsy,

21  Redbubble, Shopify, and Printful." [DE 38 ¶ 236(f)].  Defendants' contacts with third party platforms

22  – who happen to have a place of business in California – are random, fortuitous, or attenuated, at best.

23  Defendants cannot be subject to personal jurisdiction based on *Plaintiff's* chosen platform. *Walden*,

24  571 U.S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with

25  the forum State. . . the mere fact that [defendant's] conduct affected plaintiffs with connections to the

26  forum State does not suffice to authorize jurisdiction.").  Plaintiff cannot allege that Defendants'

27

28

contacts are directed to the platforms located in California simply because Red Points, located in Spain, through computer algorithms, identifies potential online infringers worldwide using search criteria – such criteria does not include platform or seller information. [Dorado Dec. ¶ 15; Rosich Dec. ¶¶ 5-7].  The resulting platform provider and online seller are random by definition.  The underlying seller using Redbubble, in this case Plaintiff, does not even post her address or provide any notice that she is a California resident on the Redbubble platform. Thus, there was no way that Defendants, through Red Points, could have targeted California. Moreover, Redbubble is domiciled in Australia.  Defendants have no way of knowing where sellers on Redbubble are located. [Dorado Dec. ¶ 16; Rosich Dec. ¶¶ 5-7]. Defendants also have no way of targeting sellers located in California on Redbubble. [Dorado Dec. ¶ 17; Rosich Dec. ¶¶ 5-7].

In an attempt to establish Defendants' minimum contacts with California, Plaintiff develops methodologies and conclusions that have nothing to do with *Defendants*, specifically.  Plaintiff lumps Defendants in with every other trademark owner issuing takedowns to counterfeiters.  For example, Plaintiff states that '"[g]iven that "*Redbubble's* proactive policing efforts to date have resulted in the disabling or removal of nearly 2,300,000 listings from the Redbubble Marketplace, covering approximately 66,700,000 products[,]' the effect on California artists and California consumers will be substantial." [DE 38 ¶ 177 (emphasis added)]. Next, Plaintiff creates a formula based on all *Etsy* takedowns – including takedowns from trademark owners that have no relationship to Defendants – to determine the number of takedowns that Defendants *might have* effectuated in California. [DE 38 ¶ 226].  None of the takedowns at issue in the Second Amended Complaint even occurred on *Etsy*. [DE 38].  Confusingly, Plaintiff states that a "search for 'Frida Kahlo' on Etsy results in more than twenty thousand (20,000) pieces." [DE 38 ¶ 226(a)]. This fact alone suggests that Defendants do not take down "thousands" of items – 20,000 are listed on Etsy, according to Plaintiff. [*Id*.] Then Plaintiff concludes that:

Given the popularity of Frida Kahlo merchandise, given FKC's aggressive take down tactics, and given that California contains the largest number of *Etsy* sellers, *it stands to reason that a substantial number of California residents are being affected by FKC's illegal takedown notices*.  [DE 38 ¶ 226 (h) (emphasis added)].

Plaintiff fails to establish personal jurisdiction, because Plaintiff must establish personal jurisdiction based on *Defendants'* contacts with California – not with Defendants' contacts with residents of California.  *Walden*, 571 U.S. at 284 ("the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State" (emphasis in the original)); *Id.* at 285 ("our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").  Accordingly, Plaintiff fails to allege the first prong under the Ninth Circuit test for specific jurisdiction.

Plaintiff then offers a second and third method of "estimating" the effect of FKC's actions on California:

a.  There is no question that Frida Kahlo is important to California.
b.  The Galería de la Raza in San Francisco is believed to have been the impetus for Frida Kahlo's centrality to the Chicano, feminist, and socials movements of the 1970's.
c.  California streets are named after her.
d.  Both the SF MOMA and the De Young have done (and will do in March 2020), major showings of her work and her life/belongings.
e.  Frida lived in San Francisco twice in her life, in 1930 and 1940.
f.  Street artists paint her in every major California city.
g.  And hundreds if not thousands of California artists create work to honor Frida Kahlo. . . .

[DE 38 ¶ 227(a)-(g);] *see also* DE 38 ¶¶228-236 (the effect of a takedown on the platforms in California)].  Plaintiff's theories have nothing to do with Defendants.  Accordingly, Plaintiff fails to allege any facts sufficient to establish the first prong of the Ninth Circuit test.

Under the second prong of the Ninth Circuit test, Plaintiff must establish that her causes of action arise from Defendants' activities *in* California.  *Axiom Foods*, 874 F.3d at 1068; *Williams*, 851 F.3d at 1023.  None of Defendants' alleged actions occurred in California.  The causes of action, if any, arise out of Defendants' activities outside of California.  Defendants used Red Points in Spain.  Red Points, enforcing Chinese and European trademarks, issued takedowns to Redbubble domiciled

in Australia. Plaintiff alleges that Defendants issue thousands of takedowns to Redbubble. Plaintiff failed to allege, and cannot in good faith allege, the number of takedowns initiated by Red Points, on behalf of Defendants, to Redbubble that effect residents in California.

With respect to Zazzle, Defendants, directly or through Red Points or any other entity, did not initiate the 2017 takedown or the 2019 engineered takedowns.  [Dorado Dec. ¶ 13]. Defendants did not even know and had no way of knowing about such takedowns. [*Id.*] Unlike with Red Points, Defendants have no agreement for Zazzle to initiate takedowns on their behalf. [Dorado Dec. 11; Dorado Dec., Ex. 1 Zazzle Contract]. Plaintiff merely concludes that "FKC's contract with Zazzle alone establishes jurisdiction." [DE 38 ¶ 9]. Entering into a contract with a nonparty alone does not subject Defendants to the Court's jurisdiction. *See Burger King Corp.*, 471 U.S. at 478. Defendants have never traveled to California in connection with the Zazzle agreement. [Dorado Dec. ¶ 10]. Further, Defendants' contractual relationship with Zazzle is not at issue in the lawsuit.  There are no causes of action relating to the breach of such a contract, if any, and Zazzle is not a party to this lawsuit.  Plaintiff makes a baseless allegation that "Zazzle, for example, has been enforcing FKC's trademark registrations for a decade." [DE 38 ¶ 7].  Zazzle is not an agent of FKC; rather, Zazzle and FKC have a non-exclusive license agreement.   [Dorado Dec. ¶ 9]. Zazzle is not an agent of Defendants, or an exclusive licensee, i.e. a licensee that has rights to enforce FKC's trademarks. [Dorado Dec. ¶ 12].  The contract between Zazzle and FKC does not include any provision requiring Zazzle to enforce FKC's trademarks. [Dorado Dec. 11; Dorado Dec., Ex. 1 Zazzle Contract].

Importantly - *Plaintiff chose* to use Zazzle and Redbubble to sell her products online. Plaintiff's choice in using such platforms have nothing to do with Defendants. Plaintiff's purported causes of action arise from her choices in using Zazzle and Redbubble and agreeing to their terms and conditions – not Defendants' actions. Accordingly, Plaintiff does not allege an affiliation between California and the underlying controversy or activity that purportedly took place in California.  Thus, Plaintiff fails to sufficiently allege the second prong of the Ninth Circuit test for specific jurisdiction,

-10-

1   i.e., that Plaintiff's claims arise out of or relate to *Defendants'* California activities.  Therefore, this

2   Court should dismiss the Complaint for lack of personal jurisdiction.

3        Further, even if, *arguendo,* the Court determines that the first two prongs are met, then the

4   exercise of personal jurisdiction does not comport with fair play and substantial justice.  Defendants

5   are Panamanian corporations and would have to travel to California to defend in this matter.  Plaintiff

6

7   can sue Defendants in Florida, if Plaintiff has any cause of action.

8        **B.   This Court Lacks Subject Matter Jurisdiction.**

9             1.   An Actual Controversy Does Not Exist

10       Plaintiff admits that Defendants reinstated the Redbubble takedowns upon learning of the

11  same. [DE 38 ¶ 139-167]. "In a case of actual controversy within its jurisdiction, . . . any court of the

12  United States, upon the filing of an appropriate pleading, may declare the rights and other legal

13  relations of any interested party seeking such declaration, whether or not further relief is or could be

14  sought." 28 U.S.C.S. § 2201(a). "A case becomes moot--and therefore no longer a 'Case' or

15  'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the

16  parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85,

17  91 (2013). Further, where the "challenged conduct cannot 'reasonably be expected to recur,'. . . the

18  fact that some individuals may base decisions on 'conjectural or hypothetical' speculation does not

19  give rise to the sort of 'concrete' and 'actual' injury necessary to establish Article III standing."

20  *Already*, 568 U.S. at 97 (internal citations omitted). Thus, there must be an actual controversy for the

21  Court to have subject matter jurisdiction for declaratory judgment actions and for Plaintiff to have

22  standing to sue Defendants for any of her causes of action.

23       Additionally, Plaintiff had the option to take action through Redbubble's policy, which is in

24  place to prevent accidental takedowns.  The Redbubble's IP/Publicity Rights Policy, provides that:

25       If you believe that removal of the content is the result of a mistake (for example, that you have
         authorisation) . . . you can send us a counter-notice. Such counter-notice must provide . . .  a
26       statement by you that, under penalty of perjury, you have a good faith belief that the material
         was removed . . . as a result of mistake or misidentification of the material . . . If your work
27       otherwise complies with our . . . Policy, we may reinstate your work.

28

[DE 2-6 at 6-7].  Plaintiff, in the Second Amended Complaint, acknowledges that the Redbubble policy provides a mechanism for the artist to provide a counter notice demonstrating non-infringement. [DE 38 ¶ 132]. However, Plaintiff clearly disagrees with the Redbubble policy and the policies of her other chosen platforms. [DE 38 ¶¶ 132-35]. Plaintiff states that the Redbubble policy presents a "Hobbesian choice" because "if an artist wants to demonstrate non-infringement, she must submit to the jurisdiction of this district, regardless of where she lives, and she will have her address and communications sent directly to FKC in order to face costly litigation." [DE 38 ¶ 134]. But, that has nothing to do with *Defendants*.  Further, it does not logically follow that Plaintiff chose to avoid Redbubble's policy because it would subject her to personal jurisdiction in this district and costly litigation, to then file a lawsuit *in this district* – the very thing that Plaintiff dislikes about Redbubble's policy.  Had Defendants been notified of Plaintiff's Redbubble takedowns through a counter notice in accordance with Redbubble's policy, Defendants would have resolved any issues at that time – just as they did upon learning of the takedowns in this case.  Instead, Plaintiff first filed this lawsuit in Federal court, and then notified Defendants of the takedowns, which were then rectified – all prior to Plaintiff serving Defendants with this lawsuit. Subsequent programming issues that arose were also resolved.  Accordingly, the issue relating to the Redbubble takedowns in this case is moot and there is no existing actual controversy relating to trademark (non)infringement.

Further, as the December 2019 Zazzle allegations, Plaintiff purposely posted her items on Zazzle to provoke a takedown from Zazzle during this litigation. [DE 38 ¶ 200]. Zazzle took Plaintiff's items down – not Defendants [*Id.* at ¶ 200] – based on Zazzle's normal content review. [Barron Dec. 4; Barron Dec., Ex. 1].  After the takedowns, Defendants provided guidelines to Zazzle to incorporate into their content review.  [Barron Dec. 4; Barron Dec., Ex. 1]. Accordingly, no actual controversy exists between Defendants and Plaintiff relating to the Zazzle takedowns.  Thus, this Court does not have subject matter jurisdiction under the Declaratory Judgment Act.

2.      Cancelation of a Trademark is Not an Independent Cause of Action.

Plaintiff also attempts to cancel *all* of Defendants' trademarks assigned to Defendants in 2007 – even those unrelated to the takedowns alleged in the pleading at issue – that have no bearing on the trademark non-infringement declaratory judgment action in this case. "Section 37 of the Lanham Act does not provide an independent basis for federal jurisdiction." *Airs Aromatics, Ltd. Liab. Co. v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595, 599 (9th Cir. 2014). Under 15 U.S.C. § 1119, cancellation is a remedy, not an independent cause of action. *Id.* at 599. "[C]ancelation may only be sought if there is already an ongoing action that involves a registered mark; it does not indicate that a cancellation claim is available as an independent cause of action." *Id.* Thus, this Court does not have subject matter jurisdiction to sweepingly cancel all of Defendants' trademarks.

Plaintiff requests this Court to cancel all registrations assigned to the Defendants in 2007. [DE 38, Prayer for Relief]. These registrations are not at issue, because the takedowns were based on European and Chinese trademark registrations, *not* the U.S. registrations assigned in 2007. Further, Plaintiff states "FKC purports to hold a registration in International Classification 16, which includes art: Registration No. 3318902 (the '902 Registration)." [DE 38 ¶ 101]. None of the takedown notices at issue in this matter were based on an allegation of infringement of the '902 Registration. The trademark non-infringement declaratory judgment claim in this case has nothing to do with the '902 Registration or any of Defendants' assigned trademarks in 2007. Accordingly, this Court does not have subject matter jurisdiction to cancel "all" of Defendants' trademarks assigned to them in 2007 or the '902 registration, as such trademarks are not at issue here.

3.      Plaintiff Fails to Plead a Basis for Jurisdiction over the State Law Claims Other than Supplemental Jurisdiction.

Plaintiff alleges that subject matter jurisdiction arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and that his Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367. [D.E. 38 §§ 4, 5]. In the event that the Court determines that it does not have jurisdiction for lack of an actual controversy for the federal claims,

-13-

then the Court will also lose subject matter jurisdiction over the state law claims in Counts for (VI) Intentional Interference with Prospective Business Advantage and (VII) Unlawful and Unfair Competition (Cal. Bus. & Prof. Code §17200 *et seq.*), because no alternative basis for subject matter jurisdiction is pleaded.

### C.      Venue is Improper Under 28 U.S.C. § 1391(b).

Plaintiff fails to allege facts to support venue in this district.   The general venue statute provides, in relevant part:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Here, as alleged by Plaintiff, Defendants are Panamanian corporations with an office in Florida. [DE 38 ¶ 3]. Defendants have no offices or presence in California. [Dorado Dec. ¶¶5, 6]. Thus, subsection (1) is inapplicable.  Plaintiff implies that venue is proper where an alleged injured plaintiff resides. [DE 38 ¶ 10]. However, the plaintiff's residence is not one of the judicial districts for venue under § 1391. Plaintiff also attempts to allege that because Defendants have a purported contract with an unrelated third parties, such as Zazzle, in California, then venue is proper. [DE 38 ¶ 10]. None of the causes of action in this lawsuit arise from the purported contract between Zazzle and Defendants.  As explained in the above section, none of the events giving rise to Plaintiff's claims occurred in California. Thus subsection (2) is inapplicable.  Subsection (3) is inapplicable, because Plaintiff could have brought the claim in the District Court for the Southern District of Florida, where FKC has an office.  Accordingly, venue is improper in the Northern District of California, and dismissal is appropriate.

IV.     **CONCLUSION**

This Court should dismiss the Second Amended Complaint against Defendants (i) for lack of personal jurisdiction under Rule 12(b)(2); (ii) dismiss the Second Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).  Dismissal is also warranted based on improper venue under Rule 12(b)(3).

Dated: March 3, 2020                              Respectfully submitted,


                                                  By: s/Darlene Barron
                                                  Darlene Barron (*pro hac vice*)
                                                  Florida Bar No. 108873
                                                  dbarron@lex188.com

                                                  TRUEBA & SUAREZ, PLLC
                                                  9150 S. Dadeland Blvd., Suite 1008
                                                  Miami, Florida 33156
                                                  Telephone:  (305) 482-1001
                                                  Facsimile:   (786) 516-2826

                                                  *Attorneys for Defendants Frida Kahlo Corporation
                                                  and Frida Kahlo Investments, S.A.*


                          **ATTESTATION**


I, MONTY AGARWAL, attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.


Dated: March 3, 2020                              Respectfully submitted,


                                                  By: /s/ Monty Agarwal

                                                  *Attorneys for Defendants Frida Kahlo Corporation
                                                  and Frida Kahlo Investments, S.A.*