EXHIBIT A

Monty Agarwal (SBN 191568)
magarwal@aaclegal.com
Antolin Agarwal, LLP
3021 Citrus Circle, Suite 220
Walnut Creek, CA 94598
Tel: (925) 262-4180
Fax: (925) 262-4269

Darlene Barron (pro hac vice)
dbarron@lex188.com
Trueba & Suarez, PLLC
9150 S. Dadeland Blvd., Suite 1008
Miami, Florida 33156
Tel: (305) 482-1001
Fax: (786) 516-2826

*Counsel for specially appearing Defendants*
*Frida Kahlo Corporation and*
*Frida Kahlo Investments, S.A.*

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINE MELO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FRIDA KAHLO CORPORATION, a Panamanian corporation, and FRIDA KAHLO INVESTMENTS, S.A., a Panamanian corporation,<br><br>Defendants. | CASE NO.: 3:19-cv-05449-CRB<br><br>**DECLARATION OF CARLOS R. DORADO IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED DECLARATORY JUDGMENT COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, F.R.C.P. 12(b)(1); LACK OF PERSONAL JURISDICTION, F.R.C.P. (b)(2) and IMPROPER VENUE, F.R.C.P. (b)(3)**<br><br>Date: April 17, 2020<br>Time: 10:00 AM<br>Judge: Hon. Judge Breyer<br>Courtroom: 6 (17th Floor) |

- 1 -
DECLARATION OF CARLOS R. DORADO, MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO.: 3:19-cv-05449

- 2 -

## DECLARATION OF CARLOS R. DORADO IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

I, Carlos R. Dorado, based on personal knowledge of the facts set forth herein, depose and state that:

1. I am over the age of eighteen and competent to attest to the matters set forth herein.

2. I am the President of Defendant Frida Kahlo Corporation, a Panamanian corporation ("FKC"), and President of Defendant Frida Kahlo Investments, S.A., a Panamanian corporation ("FKI").

3. Beatriz V. Alvarado ("Ms. Alvarado") and I are Managers of the Frida Kahlo Group, LLC ("FKG"), a Florida limited liability company, with its principal place of business at 1111 Kane Concourse, Suite 410, Bay Harbor Islands, Florida 33154. FKG maintains an office in Florida on behalf of FKC.

4. FKC uses a company, Red Points Solutions, S.L. ("Red Points"), having its principal place of business in Barcelona, Spain, to protect the Frida Kahlo brand online. It is my understanding that Red Points finds and removes online counterfeits, eliminates piracy and monitors sellers.

5. Defendants FKC and FKI are not incorporated in California, nor are they registered to do business in California.

6. Defendants FKC and FKI have no subsidiary or agent incorporated or registered to do business in California. Defendants do not have any employees in California.

7. Defendants FKC and FKI do not have any bank accounts, nor do they lease or own any property in California.

8. Defendants do not purposely target California for marketing or any other activity.

9. Zazzle.com, Inc. ("Zazzle") and FKC entered into a confidential Commercial Content License and Distribution Agreement on August 30, 2012, in which FKC granted Zazzle a non-exclusive license to sell licensed products worldwide (the "Non-exclusive License Agreement"). A redacted version of the Non-exclusive License Agreement is attached hereto as **Exhibit 1**.

10. Defendants have never traveled to California in connection with the Zazzle agreement or in connection with business.

11. The Non-exclusive License Agreement between Zazzle and FKC does not include any provision requiring Zazzle to enforce FKC's trademarks.

12. Zazzle is not an exclusive licensee of Defendants, and nothing in the contract between Zazzle and FKC has such a term.

13. Defendants, directly or through any agent, did not initiate and did not know of any takedowns of Plaintiff's items on the online platform known as Zazzle at the time of the takedowns because it is my understanding that Zazzle directly took down the items alleged in the Second Amended Complaint.

14. It is my understanding that Red Points uses an automated system based on programming rules to search the internet for counterfeit sellers. See **Exhibit 2**.

15. It is also my understanding that the programming rules for Red Points do not include any seller's location information. Some sellers do not list their location on their webpage. Some platforms may include a seller's location somewhere on the seller's page.

16. As such, Defendants have no practical way of knowing where a seller on a platform resides.

17. In addition, Defendants do not know of any way of targeting sellers on Redbubble located in California or anywhere using Red Points.

18. Defendants only learned of the Redbubble takedowns after the filing of Plaintiff's Complaint.

19. Defendants have never sent a cease and desist letter to Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 02, 2020
In Madrid, Spain.

By: _____
Carlos R. Dorado, President of Frida Kahlo Corporation, a Panamanian corporation and Frida Kahlo Investments, S.A., a Panamanian corporation

EXHIBIT 1

## Zazzle.com
## Commercial Content License and Distribution Agreement

This Commercial Content License and Distribution Agreement ("**Agreement**") is made between The Frida Kahlo Corporation, having a principal place of business at 1111 Kane Concourse Suite 410, Bay Harbour Island, FL, 33154 ("**Licensor**"), and Zazzle.com, Inc., a California corporation, having a principal place of business at 1900 Seaport Boulevard, 94063 Redwood City, CA ("**Zazzle**"), and shall be effective as of August 30, 2012 ("**Effective Date**").

1. **Definitions**

    1.1 "**Confidential Information**" means non-public information of either party that is disclosed by one party ("**Disclosing Party**") to the other party ("**Receiving Party**") pursuant to this Agreement.

    1.2 "**Licensed Property**" means the artwork, logos, photographs, trademarks and/or other graphic depictions licensed from Licensor listed on Exhibit A and provided to Zazzle by Licensor during the Term. Licensed Property includes property owned by Licensor, including FanMerch as defined in Section 5.2, and additional property transferred to Zazzle by way of Licensor's use of Zazzle's Create-A-Product API.

    1.3 "**Licensed Products**" are physical products, items, articles or things made available that include, in whole or in part, the Licensed Property as approved by Licensor.

    1.4 "**Net Referral Sales**" are defined as the purchase price received by Zazzle for the Products minus amounts charged for shipping, handling, packaging, insurance, and sales or similar taxes; refunds, credits, and reversals; and the face value of the postage (if the revenue is for Zazzle Custom Stamps).

    1.5 "**Net Sales**" means the purchase price received by Zazzle minus amounts charged for shipping, handling, packaging, insurance, and sales or similar taxes; refunds, credits, and reversals; the face value of the postage (if the revenue is for Zazzle Custom Stamps); 20% of the purchase price if the sale was a Referred Sale; and upcharges for special sizes, framing, and embellishments ("**Upcharges**").

    1.6 "**Referred Sale**" means a sale that requires that Zazzle pay a fee based upon a link from another website.

    1.7 "**Qualified Sales**" means orders for products (including Licensed Products) placed by referred buyers from graphical or text links ("**Link**") displayed on web properties owned by, or operated for, Licensor, as detected by a 45-day cookie placed in the buyer's browser by Zazzle.

    1.8 "**Zazzle Website**" means websites owned and/or operated on behalf of Zazzle, including the website located at www.zazzle.com and any corresponding foreign domains for such website.

2. **Grant of Rights**

    2.1 **License.** Licensor hereby grants to Zazzle a non-exclusive, transferable (but only as provided in Section 16.8 below) license to (i) publicly display the Licensed Property on the Zazzle Website and in promotional materials advertising the Licensed Property and/or the Zazzle Website, (ii) use, reproduce and modify the Licensed Property to create Licensed Products, and (iii) manufacture, market, sell and distribute Licensed Products made by or for Zazzle worldwide. This license shall be sublicensable only to the extent that Zazzle uses third party manufacturers to manufacture any particular product category.

    2.2 **Approvals.** Licensee shall have the approval rights set forth in Sections 5.1, 8.2, and 8.3 below.

3. **Royalties, Referral Fees and Discount Pricing**

    3.1 **Royalties.** Zazzle will pay Licensor a royalty ("**Royalty**") for all sales of Licensed Products, calculated as follows:

    

    3.2 **Referral Fees.** Zazzle shall additionally pay to Licensor a referral fee ("**Referral Fee**")

4. **Statements and Payments**

    4.1 **Statements.** An itemized statement of Royalties pursuant to 3.1.a above, and all Referral Fees due and paid will be maintained in Licensor's online "myzazzle" account. In addition, Zazzle will send custom reports on a monthly basis. Zazzle shall pay Licensor all Royalties and Referral Fees due no later than forty-five (45) days following the end of the calendar quarter when the unpaid Royalties and Referral Fees are earned.

    4.2 **Records and Audit.** Zazzle shall keep records of all sales transactions sufficient to establish all amounts due to Licensor under this Agreement and to verify all statements and payments made by Zazzle to Licensor hereunder. Licensor shall have up to twelve (12) months following the applicable monthly payment period to provide Zazzle with notice of its intent to commence an audit of the books and records of Zazzle relating to the Licensed Products. Licensor shall provide Zazzle with at least ten (10) business days' advance written notice of the approximate date Licensor would like to conduct the audit, and any such audit shall take place during Zazzle's regular business hours. The audit shall be performed by an auditor who has entered into a written confidentiality agreement protecting or is otherwise bound to protect Zazzle's Confidential Information from disclosure to any third party. Such audit shall be at Licensor's sole cost and expense, unless, as a result of the auditor's examination, it is determined that the total of Royalties and Referral Fees are underreported in excess of ten percent (10%) of the total dollar amount set forth on the statements for the period audited, in which event Zazzle will pay the documented cost of the audit.

5. **Zazzle responsibilities.** Zazzle will provide Licensor the following benefits at no cost:

-1-

5.1. **Store Design and Account Management.** Zazzle will provide assistance to Licensor in the design and development of a co-branded store(s) ("Store") and will host, and operate the Store featuring Licensed Products. Zazzle will assign an account manager to provide support, including managing the Store design based on Licensor's brand guidelines, featuring the Licensed Products, content management, royalty and referral fee reporting. Zazzle will submit the Store to Licensor for approval prior to marketing the Store to consumers. Licensor will not unreasonably delay or withhold its approval.

5.2. **Artist Created Designs.** Zazzle will announce to its community of artists that Licensor has agreed to allow Zazzle's community to create designs incorporating the Licensed Property ("FanMerch"), subject to certain restrictions. Zazzle and Licensor will formulate the list of restrictions for each license prior to any such announcement. Zazzle will manage and host the process and platform for the uploading and display of FanMerch in accordance with the restrictions and will be responsible for paying royalties to the artists who create FanMerch.

5.3. **Content Management.** During the Term of the Agreement, Licensee will allow users to create, order and purchase customized Licensed Products, which shall be subject to guidelines established by Licensor and provided to Zazzle ("Licensor's Guidelines"). All user content to be added in accordance with the paragraph above as a part of a Customized Licensed Product will be Filtered (as defined below) by Licensee after the order for the Customized Licensed Product has been placed but before the order has been fulfilled. "Filter" and its derivatives means the screening of content being used by a user to prevent the purchasing of any content which violates Licensor's Guidelines.

5.4. **Sales and Order Fulfillment.** Zazzle will offer the Licensed Products for sale to customers on the Zazzle Site. The retail price for Licensed Products is subject to Zazzle's standard volume discounts and other promotional offers on the Zazzle Site. Zazzle will process and fulfill all customer orders and returns and provide all customer service to customers. This service includes stocking inventory of blank products.

6. **Licensor responsibilities**

During the term Licensor will be responsible for:

(i) **Artwork.** Licensor will provide Zazzle with all approved, fully cleared image assets for Licensor ("Licensed Content") at least 30 days prior to the anticipated launch date of the Store to be used in accordance with the licenses and other terms of this Agreement. All Images will be in high-resolution format and of producible quality. Licensor will also provide Zazzle with all metadata associated with each asset for Licensor ("Licensed Content") in an excel format to be specified by Zazzle. For each Store, Licensor agrees to provide a substantial number of designs and promptly to approve designs, products and related content created by Zazzle. Licensor further agrees to deliver additional production-quality assets on an ongoing basis.

(ii) **Online Distribution.** Licensor will to place Links to Licensor's Store or Galleries on Licensor-controlled webpages and affiliated sites no later than ten (10) days after the Store is live on the Zazzle Website. Links will: a) take the form of text or graphical links; b) be placed on webpages in a prominent way (above-the-fold or as an item in the page's main navigation); and c) feature the "Powered by Zazzle" logo as provided to Licensor by Zazzle.

7. **Promotion**

7.1 **Zazzle and Licensor** will jointly announce the launch of the Store, as mutually agreed, with an email announcing the launch to Licensor customer and prospect list, if applicable, as well as a launch press release as mutually agreed.

7.2 Zazzle will include Licensor's name and/or logo in the "Branded Partner" section or any equivalent and/or successor area (the "**Featured Area**") of the Zazzle Website during the Term of this Agreement.

7.3 At least once each quarter, the parties will meet to discuss marketing and promotional campaigns to be run during the following quarter. If the promotions contemplate product discounts or give-aways, the parties shall agree as to how the promotions will be funded. In general, during each quarter Licensor and Zazzle agree to strategically distribute, market and promote Licensed Products in the following manner:

(i) Links from Licensor sites and online stores to co-branded pages created and hosted by Zazzle
(ii) Links from the front-page of Licensor websites to Zazzle.com/Licensor co-branded pages
(iii) Placements in appropriate categories on Zazzle website
(iv) Quarterly email marketing campaigns using Licensor's lists

8. **Samples, Promotional Materials**

8.1 **Samples.** At least five (5) business days before the commencement of sale of Licensed Products by Zazzle, Zazzle will furnish to Licensor a representative sample for each product category ("Samples"). Such Samples shall display a representative selection of Licensed Property images selected by Zazzle.

8.2 **Approval.** Licensor will approve or reject the Samples within five (5) business days following receipt of the Samples. If written notice of rejection has not been received by Zazzle within such five (5)-day period, the Samples shall be deemed approved by Licensor. In the event that Licensor is dissatisfied with the quality of the Samples, Licensor will notify Zazzle in writing of the reason for Licensor's dissatisfaction within such five (5)-day period, and Zazzle and Licensor will work together to resolve Licensor's quality concerns. Zazzle may submit alternate Samples for approval at any time following rejection by Licensor. Zazzle shall not offer for sale any Licensed Products until Samples for the applicable Licensed Product category have been approved by Licensor in accordance with this Section 8.2.

8.3 **Promotional Materials.** In the event that Zazzle elects to produce advertising copy, brochures or any other written or audio or visual promotional materials, Zazzle will first submit the same to Licensor for written approval provided, however, that Zazzle will not be required to seek prior approval for images of previously approved Licensed Products displayed in advertising or promotional materials or affiliate channels or shopping feeds. If Licensor fails to either approve or disapprove a submission in writing within ten (10) business days of receipt, the submission shall be deemed approved. If disapproved, Licensor will state the specific aspects of the submission to which it objects. Zazzle will not use any disapproved material.

9. **Custom Postage Products.**

9.1 Notwithstanding anything to the contrary in this Agreement, if Licensor approves distribution of Licensed Custom Postage, the provisions of this Section 9 shall apply to all sales of Licensed Custom Postage by Zazzle under this Agreement.

-2-

9.2 "**Licensed Custom Postage**" means United States postage displaying an element of the Licensed Property and created by Zazzle for a customer as part of Zazzle's custom postage product offering. Licensed Custom Postage is currently sold in sheets consisting of twenty (20) first-class letter postage pieces per sheet, and each Licensed Custom Postage piece shall display an image selected by the customer, all in strict accordance with United States Postal Service rules and regulations.

9.3 The Licensed Custom Postage is provided by Zazzle pursuant to technology obtained under a license agreement entered into between Zazzle and a third-party provider approved by the United States Postal Service to provide custom postage products ("Postage Provider"). Notwithstanding anything in this Agreement to the contrary, and in acknowledgement of the foregoing, Licensor agrees that, in accordance with United States Postal Service regulations for postage format and design, the Licensed Custom Postage will be printed to display the following elements in addition to, and in combination with, the Licensed Property image: (A) a unique bar code will be printed on the Licensed Custom Postage for tracking by the United States Postal Service, and (B) attribution of Licensor and the Postage Provider (only, however, to the extent required by law or United States Postal Service regulations) shall be printed in plain text along the outer edge of each Licensed Custom Postage piece.

9.4 Licensor acknowledges that the Licensed Property on the Licensed Custom Postage are not approved or endorsed in any way by the USPS and agrees not to make promotional references to Licensed Products as "stamps" or "postage stamps," nor make any representations which could cause a reasonable person to believe that the Licensed Property is provided, approved, or endorsed by the USPS. All use of any trademarks included among the Licensed Property on Licensed Custom Postage shall conform with all United States Postal Service regulations applicable to custom postage products.

9.5 Samples of Licensed Custom Postage provided by Zazzle to Licensor under Section 8.1 above shall be for quality control and approval purposes only, and shall not be valid postage.

10. **Proprietary Rights.**

10.1 Copyright and Trademark Notices. All Licensed Products must bear the legible trademark and copyright notices set forth on Exhibit B hereto (or such other reasonable notice as may be provided in writing by Licensor). Licensor acknowledges the space limitations of Licensed Custom Postage and hereby agrees to provide Zazzle with alternate abbreviated forms of its copyright and trademark notices for display on Licensed Custom Postage.

10.2 Licensor. Zazzle acknowledges and agrees that, as between the parties, Licensor owns all right, title and interest in and to the names and marks of Licensor and the Licensed Property, and Zazzle has not acquired and will not acquire any proprietary rights in the names and marks of Licensor or the Licensed Property, except as otherwise expressly provided by the license granted in Section 2 above. Use of the name and trademarks of Licensor and/or the Licensed Property by Zazzle will be for and inure to the benefit of Licensor. Zazzle will not take any action to jeopardize Licensor's proprietary rights, or acquire any rights, in Licensor's name or trademarks or the Licensed Property, except for rights expressly granted by this Agreement. Licensor may provide Zazzle with use guidelines and/or other restrictions regarding Zazzle's right to use Licensor's name or trademarks and/or the Licensed Property. Any and all uses of Licensor's name or trademarks by Zazzle shall be agreed to in advance and approved in writing by Licensor prior to any such use. Licensor may, from time to time, request in writing specimens of all uses of the Licensor's name or trademarks to assess the level of consistency and quality of use of the respective trademark and to ensure that Zazzle maintains the consistency and quality of said marks throughout the Term of this Agreement.

10.3 Zazzle Name and Marks. Licensor acknowledges and agrees that Licensor has not acquired and will not acquire any proprietary rights in the names and marks of Zazzle (and the names or marks of certain of its suppliers and/or third-party licensors) by reason of this Agreement. Notwithstanding the foregoing, uses of Zazzle names and marks in a factual manner on Licensor's website and in any promotional and/or press material for the Licensed Products, if consistent with Zazzle's Trademark Guidelines, shall be deemed approved unless Zazzle specifically notifies Licensor to the contrary. All such uses and goodwill associated with the Zazzle name and marks will be for and inure to the benefit of Zazzle. Licensor will not take any action to jeopardize Zazzle's proprietary rights, or acquire any rights, in the Zazzle name or marks, except the limited use rights specified in this Section 10.3. Zazzle shall provide Licensor with any Trademark Guidelines and any other restrictions regarding such use. Any other uses of Zazzle names or marks by Licensor shall be agreed to in advance and approved in writing by Zazzle prior to any such use. Zazzle may, from time to time, request in writing specimens of all uses of the Zazzle name and marks to assess the level of consistency and quality of use of the respective trademark and to ensure that Licensor maintains the consistency and quality of said marks throughout the Term of this Agreement.

11. **Confidentiality.**

11.1 Confidential Information. Each party acknowledges that in the course of the performance of this Agreement, it may obtain the Confidential Information of the other party. The Receiving Party shall, at all times, both during the Term and thereafter for a period of three (3) years keep in confidence and trust all of the Disclosing Party's Confidential Information received by it. The Receiving Party shall not use the Confidential Information of the Disclosing Party other than as necessary to fulfill the Receiving Party's obligations or to exercise the Receiving Party's rights under the terms of this Agreement. The Receiving Party shall take reasonable steps to prevent unauthorized disclosure or use of the Disclosing Party's Confidential Information and to prevent it from falling into the public domain or into the possession of unauthorized persons, but in no event shall the Receiving Party use less care than it would in connection with its own Confidential Information of like kind. The Receiving Party shall not disclose Confidential Information of the Disclosing Party to any person or entity other than its officers, employees and consultants who need access to such Confidential Information in order to affect the intent of this Agreement.

11.2 Exceptions to Confidential Information. The obligations set forth in Section 11.1 above shall not apply to the extent that Confidential Information includes information that is: (a) now or hereafter, through no unauthorized act or failure to act on the Receiving Party's part, in the public domain; (b) known to the Receiving Party without an obligation of confidentiality at the time the Receiving Party receives the same from the Disclosing Party, as evidenced by written records; (c) hereafter furnished to the Receiving Party by a third party as a matter of right and without restriction on disclosure; (d) furnished to others by the Disclosing Party without restriction on disclosure; or (e) independently developed by the Receiving Party without use of the Disclosing Party's Confidential Information.

11.3 Permitted Disclosures. Nothing in this Agreement shall prevent the Receiving Party from disclosing Confidential Information to the extent the Receiving Party is legally compelled to do so by any governmental investigative or judicial agency pursuant to proceedings over which such agency has jurisdiction; provided,

-3-

DEF000003

Attorneys' Eyes Only - Highly Confidential

however, that prior to any such disclosure, the Receiving Party shall (i) assert the confidential nature of the Confidential Information to the agency; (ii) immediately notify the Disclosing Party in writing of the agency's order or request to disclose; and (iii) cooperate fully with the Disclosing Party in protecting against any such disclosure and/or obtaining a protective order narrowing the scope of the compelled disclosure and protecting its confidentiality. Either party may provide a copy of this Agreement to the following persons and/or entities who are under obligations of confidentiality substantially similar to those set forth in this Agreement: potential acquirers, merger partners and/or investors and to their employees, agents, attorneys, investment bankers, financial advisors and auditors in connection with the due diligence review of such party. Either party also may provide a copy of this Agreement to: (i) the party's public accounting firm in connection with the quarterly and annual financial or tax audits, and (ii) to the party's outside legal advisors in connection with obtaining legal advice relating to this Agreement, the relationship established by this Agreement or any related matters.

12. **Representations and Warranties.**

12.1 Licensor represents and warrants that it has the full right and authority to enter into this Agreement and the right to grant the licenses contained in Section 2 of this Agreement.

12.2 Zazzle represents and warrants that it has the full right and authority to enter into this Agreement.

13. **Indemnification.**

13.1 By Licensor. Licensor agrees to indemnify and hold harmless Zazzle and its directors, officers and employees from all losses, claims of losses, damages and expenses (including without limitation court costs and reasonable attorneys' fees) asserted against Zazzle by third parties arising from or related to infringement of any rights of any third party by (a) the Licensed Property or (b) the exercise of the rights granted to Zazzle by Licensor in accordance with the terms and conditions of this Agreement. The obligations of this Section 13.1 are contingent on Zazzle (x) giving Licensor prompt written notice of any such claim; (y) providing reasonable cooperation in the defense and all related settlement negotiations; and (z) agreeing that Licensor shall have sole control over the litigation or settlement of such claim.

13.2 By Zazzle. Zazzle agrees to indemnify and hold harmless Licensor, its parent, subsidiary and affiliated companies, and their respective directors, officers and employees from all losses, damages and expenses (including without limitation court costs and reasonable attorneys' fees) asserted against Licensor by third parties arising from or related to the Zazzle Website, the Licensed Products or Zazzle's use of the Licensed Property, except to the extent Licensor is obligated to indemnify Zazzle under Section 13.1 above. The obligations of this Section 13.2 are contingent on Licensor (x) giving Zazzle prompt written notice of any such claim; (y) providing reasonable cooperation in the defense and all related settlement negotiations; and (z) agreeing that Zazzle shall have sole control over the litigation or settlement of such claim.

14. **DISCLAIMERS AND LIMITATIONS**

14.1 Warranty Disclaimer. EXCEPT AS PROVIDED IN SECTION 12 ABOVE, THE PARTIES HEREBY DISCLAIM ALL WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. AND WITHOUT LIMITATION ZAZZLE DISCLAIMS ANY WARRANTY THAT (A) THE ZAZZLE WEBSITE WILL BE CONTINUOUSLY AVAILABLE, (B) WILL OPERATE WITHOUT ERROR, OR BE IMMUNE TO SECURITY BREACHES OR THAT (C) ZAZZLE WILL SELL, OR WILL EXERT ANY EFFORTS TO SELL, ANY SUBSTANTIAL NUMBERS OF LICENSED PRODUCTS.

14.2 Waiver of Consequential Damages. EXCEPT WITH RESPECT TO A BREACH OF SECTION 11 ABOVE OR A CLAIM FOR INDEMNIFICATION MADE UNDER SECTION 13 ABOVE, NEITHER PARTY SHALL HAVE ANY LIABILITY TO THE OTHER FOR INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES OR LIABILITIES OF ANY KIND OR FOR LOSS OF REVENUE, LOSS OF BUSINESS OR OTHER FINANCIAL LOSS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT PRODUCT LIABILITY OR OTHERWISE, EVEN IF ANY REPRESENTATIVE OF A PARTY HERETO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14.3 LIMITATION OF LIABILITY. EXCEPT FOR THE INDEMNIFICATION OBLIGATIONS SET FORTH IN SECTION 13, IN NO EVENT WILL EITHER PARTY'S TOTAL LIABILITY UNDER THIS AGREEMENT EXCEED THE NET SALES OF LICENSED PRODUCTS SOLD DURING THE TERM OF THIS AGREEMENT.

15. **Term and Termination.** Term and Termination

15.1 Term. 

15.2 Termination. 

15.3 Effect of Termination. 

16. **General.**

16.1 Governing Law. This Agreement shall be governed by and construed under the laws of the United States and the State of

DEF000004
Attorneys' Eyes Only - Highly Confidential

California as applied to agreements entered into and to be performed entirely within California between California residents.

16.2 Notices. All notices, demands, requests or other communications that may be given by any party to the other pursuant to this Agreement shall be in writing and shall be sent by certified or registered mail, return receipt requested, by Federal Express or similar service that records delivery, or by facsimile transmission combined with any of the foregoing methods of notice, to the addresses set forth in the preamble to this Agreement, or to such other address as provided by a party in writing.

16.3 Scope of Agreement. This Agreement, including the Exhibits referenced herein above and attached hereto, constitute the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior or contemporaneous, express or implied, written or oral, agreements, representations and conditions between the parties with respect thereto. This Agreement may only be modified or amended by a written instrument signed by the parties.

16.4 Waivers. No failure or delay by either party in exercising any right, power or remedy under this Agreement shall operate as a waiver of any such right, power or remedy. Any waiver by either party of any provision of this Agreement shall not be construed as a waiver of any other provision of this Agreement, nor shall such waiver operate as or be construed as a waiver of such provision respecting any future event or circumstance.

16.5 Severability. In the event any provision of this Agreement (or portion thereof) is determined by a court of competent jurisdiction to be invalid, illegal or otherwise unenforceable, such provision shall be deemed to have been deleted from this Agreement, while the remainder of this Agreement shall remain in full force and effect according to its terms.

16.6 Construction. This Agreement reflects the wording accepted by the parties, and no rule of construction shall apply against either party. Each party retains the right to correct any typographical or other clerical errors in this Agreement.

16.7 Survival. Upon any termination of this Agreement, the following Sections shall remain in full force and effect: 1, 4.2, 10, 11, 12, 13, 14, 15.3 and 16.

16.8 Assignment. Neither party may assign any rights or delegate any duties under this Agreement (other than the right to receive payments) without the other party's prior written consent, except that either party can assign this Agreement or any of its rights or obligations arising hereunder to the surviving entity in a merger, acquisition or consolidation in which it participates, or to a purchaser of substantially all of its assets. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the respective successors and assigns of the parties hereto, and notwithstanding anything to the contrary in the foregoing, Licensor shall have the right to terminate this Agreement immediately in the event that Zazzle is merged or consolidated with or is acquired by a competitor of Licensor as determined by Licensor in its sole discretion.

16.9 Counterparts. This Agreement may be executed in two or more counterparts, any or all of which shall constitute one and the same instrument.

16.10 Compliance with Laws. Each party shall comply with all applicable state, federal and local laws in the performance of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives.

"LICENSOR"

By: _[signature]_
Name: CARLOS DORADO
Title: PRESIDENT
Date: 8.10.2012

"ZAZZLE"

ZAZZLE.COM, INC.

By: _____
Jason Kang, CFO

Date: _____

-5-

DEF000005
Attorneys' Eyes Only - Highly Confidential

**EXAMPLE FANMERCH TERMS**

Use your creativity to create and submit original designs inspired by Frida Kahlo! Design submissions must be consistent with the terms below, and all designs are subject to removal at any time.

Here's how to get started:

- Submit your original artwork, designs and slogans by using the FanMerch Design Tool located at: www.zazzle.com/[propertyname]
- FanMerch designs are limited to the products referenced with the design interface.  If you create a product outside of this offering, it will be removed from the marketplace immediately.
- Upon publishing the product, all Frida Kahlo FanMerch submissions will become the property of Frida Kahlo Corporation.
- All images will be tagged with "Frida Kahlo Corporation ©" or " FKC ©"
- Set your Royalty Rate at []%
    - Please Note: Royalty Rates will be re-set to [5]% if they are found to be above the allowable rate for FanMerch

The Inspiration! *To be informed by Partner*
Frida Kahlo Corporation wants to allow artist and fans to create and customize work inspired by the personality and devotion for life of Frida Kahlo.  Frida painted pain and passion using intense, vibrant colors.  Her iconic existence, unique expression and extraordinary art work have provided humanity with continuing optimism, strength and courage, artist and fans will be able to create their own unique designs and paintings to customize products for customers worldwide.

Design Guidelines for Frida Kahlo FanMerch:

- **DO** – create original designs inspired by Frida Kahlo.
- **DON'T** – use Frida Kahlo images or photographs that you find on the web – nothing trademarked or proprietary to another party can be used.
- **DO** – create designs in good taste.
- **DON'T** – reference anything overly racy or distasteful.
- **DO** – revise, parody, and play on Frida Kahlo if it fits your design.
- **DON'T** – use your designs outside of this program. Permission to use these designs is limited to this program. DON'T – expect any ownership of any revision or parody of Frida Kahlo. All revisions and parodies become the sole property of Frida Kahlo, and all uses of the Frida Kahlo inure to the benefit of Frida Kahlo and its licensors.
- **DON'T** – use profanity, vulgar, hate language or graphically violent images, explicit sexual language, references to drugs or medication, derogatory references to race, gender, religion, mental handicap, obesity or physical impairment.
- **DON'T** – use political party associations. (e.g. Republican, Democratic)

All designs must also abide by Zazzle's Terms of Use and Appropriate Use Guidelines, for more information please visit:

- User Agreement
- Non-Exclusive License Agreement

DEF000006
Attorneys' Eyes Only - Highly Confidential

- [Acceptable Content Guidelines](#)

Special Note about FanMerch:

Frida Kahlo and Zazzle reserve the right to remove any design for any reason, including failure to comply with the rules above. Any designs that are not submitted thru the [property name] site will be removed from Zazzle's Marketplace. Zazzle also reserves the right to re-set your royalty rate to [ ]% for any FanMerch submissions. By submitting FanMerch designs, you agree to these FanMerch terms, which supplement Zazzle's terms of use and may be updated from time-to-time.

© Add legal line as necessary.

DEF000007
Attorneys' Eyes Only - Highly Confidential

EXHIBIT 2

Monty Agarwal (SBN 191568)
magarwal@aaclegal.com
Antolin Agarwal, LLP
3021 Citrus Circle, Suite 220
Walnut Creek, CA 94598
Tel: (925) 262-4180
Fax: (925) 262-4269

Darlene Barron (pro hac vice)
dbarron@lex188.com
Trueba & Suarez, PLLC
9150 S. Dadeland Blvd., Suite 1008
Miami, Florida 33156
Tel: (305) 482-1001
Fax: (786) 516-2826

*Counsel for specially appearing Defendants*
*Frida Kahlo Corporation and*
*Frida Kahlo Investments, S.A.*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINE MELO, an individual, | CASE NO.: 3:19-cv-05449-CRB |
| Plaintiff, | |
| v. | **DECLARATION OF CAROLINA ROSICH** |
| FRIDA KAHLO CORPORATION, a Panamanian corporation, and FRIDA KAHLO INVESTMENTS, S.A., a Panamanian corporation, | |
| Defendants. | |

- 1 -
DECLARATION OF CAROLINA ROSICH, CASE NO.: 3:19-cv-05449

## **DECLARATION OF CAROLINA ROSICH**

I, Carolina Rosich, based on personal knowledge of the facts set forth herein, depose and state that:

1. I am the Chief Legal Officer of Red Points Solutions, S.L., based in Barcelona, Spain (hereinafter, "Red Points").

2. Red Points is a company that assists brand owners with monitoring the use of their intellectual property rights on the Internet, and especially with respect to the use of their brands to sell goods and services on online marketplaces such as e-Bay, RedBubble, Etsy, Amazon and others. Red Points uses algorithms to search various websites, looking for improper uses of our customers' intellectual property rights in connection with the online sale of goods or services.

3. One of Red Points' customers is the Frida Kahlo Corporation, a Panama based corporation.

4. The Frida Kahlo Corporation has provided to Red Points evidence that it owns several trademark registrations covering several classes of goods in USA, Europe, China and other territories. Red Points and the Frida Kahlo Corporation worked together to set up parameters to police the use of Frida Kahlo Corporation's trademarks for several goods.

5. Based on our algorithms, we cannot know the address of an infringing seller of products, in large part because not all of the platforms offer the seller location or ship from / ship to locations.

6. Our programming rules do not enable us to provide information relating to the address or state of the recipient of a takedown notice.

7. Further, the programming rules as defined for Frida Kahlo Corporation do not include any rules to send takedown notices to sellers located in California.

1  I declare under penalty of perjury under the laws of the United States of America that the
2  foregoing is true and correct.
3  Executed on March 3rd, 2020
4  In Barcelona, Spain.                By: _____
                                            Carolina Rosich, Chief Legal Officer of Red
5                                           Points Solutions, S.L.

- 3 -
DECLARATION OF CAROLINA ROSICH, CASE NO.: 3:19-cv-05449